## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HAROLD C. WILLIS,** | : | **CIVIL ACTION NO. 1:07-CV-0949** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CARROLL TOWNSHIP, JENNIFER B.** | : | |
| **HIPP, ROBERT F. FAULKNER,** | : | |
| **ROBERT L. SCHOPFER, JEFFREY T.** | : | |
| **MURPHY, CALVIN E. HIPP, KEVIN** | : | |
| **A. ZINN, DIANNE PRICE, and MARK** | : | |
| **HILSON,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Harold C. Willis ("Willis") brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights.  Presently before the court are:  (1) the motion to dismiss (Doc. 7), filed by defendants Carroll Township, Robert F. Faulkner, Robert L. Schopfer, Jeffrey T. Murphy, Calvin E. Hipp, Kevin A. Zinn, Dianne Price, and Mark Hilson, and (2) the motion to dismiss (Doc. 10), filed by defendant Jennifer B. Hipp.  For the reasons that follow, the motions to dismiss will be granted in part and denied in part.  Willis will be granted leave to file an amended complaint.

I.    **Statement of Facts**[1]

On May 24, 2004, Willis purchased a forty-eight acre tract of land in Carroll

Township (hereinafter "the Township").  The tract is divided by the intersection of

Ridge and Chestnut Grove Roads into the following four quadrants:  (1) a 17.35 acre

northeast quadrant, (2) an 18.31 acre northwest quadrant, (3) a 4.25 acre southwest

quadrant, and (4) a 6.91 acre southeast quadrant.  (Doc. 1 ¶¶ 3, 11-12.)  Township

representatives subsequently contacted Willis to inquire about whether he would

be willing to sell one of the four quadrants to the Township for recreational use

purposes.  (Id. ¶ 13; Doc. 28, Ex. K at 2.)  He entered into negotiations with

defendant Township Manager Dianne Price ("Price"), and ultimately agreed to sell

the 17.35 acre northeast quadrant to the Township for $225,000 on August 31, 2004.

(Doc. 1 ¶ 14.)  Settlement was originally scheduled for December 31, 2004, but the

parties extended the settlement date to June 30, 2005.  (Doc. 9, Ex. H at 3.)

In November 2004, Willis filed an initial subdivision plan with the Township.

The plan proposed subdividing the 18.31 acre northwest quadrant and the 6.91 acre

southeast quadrant into building lots.  The plan made no similar proposal with

respect to the 17.35 acre northeast quadrant that was the subject of the agreement

with the Township.  (Doc. 1 ¶¶ 16-19; Doc. 9, Ex. H at 3.)  Price and defendant

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint and in the public records provided by defendants.  See infra Part II.  The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

Township Engineer Mark Hilson ("Hilson") "demanded" that certain conditions be met before they would recommend approval of Willis's plan to the Township Board of Supervisors.[2]  These conditions required Willis to:  (1) demolish the home and other improvements located on the 17.35 acre northeast quadrant that the Township had agreed to purchase, (2) construct road overlay along the portions of Ridge and Chestnut Grove Roads that bisect his property, (3) relocate all utilities underground, and (4) place street trees along the portions of Ridge and Chestnut Grove Roads that bisect his property.  (Doc. 1 ¶¶ 24-25.)  Willis alleges that there was no legitimate land development reason for these conditions and that the majority of them were imposed "for the benefit of" the 17.35 acre northeast quadrant that the Township had agreed to purchase.  (Id. ¶¶ 26-27.)

On April 14, 2005, the Township Planning Commission voted to recommend approval of Willis's plan to the Board of Supervisors.  The Commission's approval was conditioned upon Willis's agreement to plant street trees along Ridge and Chestnut Grove Roads.  Willis objected to this requirement, claiming that the Township's subdivision and land development ordinance did not require the planting of street trees along pre-existing roads.  Following Willis's objection, the Commission revoked its recommendation of approval of Willis's plan.  (Id. ¶¶ 28-30.) On May 6, 2005, Willis withdrew his plan.  (Doc. 9, Ex. H at 4.)

---

[2]  The five members of the Township Board of Supervisors, namely, Robert F. Faulkner, Robert L. Schopfer, Jeffrey T. Murphy, Calvin E. Hipp, and Kevin A. Zinn, are all named defendants in this action.  For the balance of this opinion, they will be collectively referred to as "the Supervisor defendants."

3

On May 19, 2005, Willis's representative advised Price that the Township had breached the terms of the agreement of sale of the 17.35 acre northeast quadrant. (Doc. 1 ¶ 31.) Two weeks prior, Willis had entered into a separate agreement of sale, pursuant to which he had agreed to sell the 17.35 acre northeast quadrant to Kelly G. and Marvin J. Diller ("the Dillers") for $225,000. The Dillers paid Willis a $5,000 deposit. (Id. ¶¶ 32, 36.) Ultimately, Price informed the Dillers that the Township would prevent their purchase of the 17.35 acre northeast quadrant because the parcel had been promised to the Township. The Dillers then expressed an interest in the 18.31 acre northwest quadrant, but Price told them that the Township may also acquire that parcel. (Id. ¶¶ 33-34.) On May 26, 2005, defendant Township Solicitor Jennifer B. Hipp ("Attorney Hipp") sent a letter to Willis and Diller. The letter provides, in pertinent part, as follows:

> We write on behalf of Carroll Township . . . . We are disappointed in what has transpired between Harold C. Willis and Carroll Township regarding the sale of [Willis's property], which is located in Carroll Township.
>
> You advised that your client, Harold C. Willis, will not sell a portion of [his property] to Carroll Township and will, instead, sell the entire property to Marvin Diller. You advised that the sale would be complete on or before June 3, 2005.
>
> Please be advised that Carroll Township will exercise its right of eminent domain with respect to [Willis's] property either in whole or in part. Given the speed by which this matter has developed, we feel it is necessary to notify Harold C. Willis of Carroll Township's position and, therefore, are contacting Mr. Willis by a copy of this correspondence. Furthermore, we are notifying Marvin Diller of Carroll Township's position by copy of this correspondence.
>
> Carroll Township reserves any and all rights to proceed in an action regarding the Sales Agreement that Carroll Township and Mr. Willis entered into for the sale of a portion of [Willis's property].

4

(Doc. 1, Ex. A; <u>see also</u> Doc. 1 ¶ 35.)  Willis alleges that the Township's communications with the Dillers effectively terminated the Dillers' efforts to acquire any portion of his property and forced him to refund their $5,000 deposit. (Doc. 1 ¶¶ 36-37.)

On July 22, 2005, Willis entered into an agreement of sale, whereby he committed to sell the 6.91 acre southeast quadrant to Wayne Piper ("Piper") for $159,000.  Piper paid Willis a $5,000 deposit.  (<u>Id.</u> ¶¶ 38, 40.)  Willis alleges that Price discouraged Piper from purchasing the parcel by advising him that he would be required to engage in a lengthy re-zoning process before he could utilize it for the purpose he intended.  (<u>Id.</u> ¶ 39.)  Ultimately, Piper forfeited his deposit.  (<u>Id.</u> ¶ 40.) Willis alleges that five other parties have expressed interest in portions of his property.  After Willis referred them to the Township, all five of the parties lost interest.  (<u>Id.</u> ¶ 41.)

Meanwhile, on June 17, 2005, the Township had erroneously filed a declaration of taking with respect to the 18.31 acre northwest quadrant in the York County Court of Common Pleas.  On October 18, 2005, the Township discovered its error and filed a declaration of relinquishment with respect to the 18.31 acre parcel and a new declaration of taking with respect to the 17.35 acre northeast quadrant. (Doc. 9, Ex. A at 1; Ex. B at 2.)  On November 4, 2005, Willis filed preliminary objections to this new declaration of taking, claiming that his entire property had previously been taken by the Township via de facto condemnation.  (<u>Id.</u>, Ex. H at 2.) By opinion and order dated April 23, 2007, the York County Court of Common Pleas

determined that Willis had not met his burden to prove that a de facto taking of his entire property had occurred.  (Doc. 9, Ex. H at 5, 12.)  The Pennsylvania Commonwealth Court affirmed this decision on December 10, 2007.  (Doc. 28, Ex. K at 16.)

Nonetheless, on October 19, 2006, the York County Court of Common Pleas entered judgment against the Township and in favor of Willis for the estimated amount of $260,000 as payment *pro tanto* of the amount of just compensation that may be finally determined for the taking of the 17.35 acre northeast quadrant. (Doc. 9, Ex. E); see 26 P.S. § 1-407 (2006) (stating that where a condemnor fails to pay just compensation within sixty days of the filing of a declaration of taking, the court may "enter judgment for the amount of the estimated just compensation"). From the record before this court, it appears that the final amount of just compensation due to Willis has not been determined.

On May 24, 2007, Willis filed the instant action alleging that defendants violated his Fourth, Fifth,[3] and Fourteenth Amendment rights.  (See Doc. 1.)  On July 10, 2007, defendants filed the instant motions to dismiss, alleging that: (1) Willis had neglected to prove that Attorney Hipp was a state actor for purposes of § 1983, (2) Willis had failed to establish personal involvement on the part of the Supervisor defendants, (3) Willis's equal protection claim was barred by principles

---

[3]  Willis concedes that his complaint was not intended to implicate the Takings Clause of the Fifth Amendment, but only to assert claims pursuant to the Due Process and Equal Protection Clauses.  (Doc. 16 at 10.)

of collateral estoppel, and (4) the remainder of Willis's claims failed to state a claim upon relief could be granted.  (See Docs. 7, 10.)  The motions have been fully briefed and are ripe for disposition.

## II.    **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the

claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007). Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting Twombly, ___ U.S. at ___, 127 S. Ct. at 1969). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.   **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws. Gonzaga Univ. v. Doe, 536 U.S. 273,

8

284-85 (2002); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  <u>Id.</u> (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the action *sub judice*, Willis alleges that defendants violated his Fifth and Fourteenth Amendment rights to due process and equal protection and his Fourth Amendment right against unlawful seizures.  The court will address these claims *seriatim*, after first discussing the antecedent requirements of state action and personal involvement.

A. <u>**Color of State Law**</u>

Attorney Hipp contends that Willis's claims against her should be dismissed because she did not act under color of state law.[4]  (Doc. 11 at 7-10; Doc. 19 at 4-5.) Willis's allegations against Attorney Hipp arise from her May 26, 2005 letter, in which she advised that she was writing "on behalf of Carroll Township," that the Township intended to "exercise its right of eminent domain with respect to [Willis's] property either in whole or in part," and that the Township reserved "any and all rights to proceed in an action regarding the Sales Agreement that Carroll Township and Mr. Willis entered into for the sale of a portion of [his property]." (Doc. 1, Ex. A.)

---

[4]  For purposes of the instant analysis, the remaining defendants do not argue that they were not "acting under color of state law."

9

It is firmly established that an attorney does not become a state actor for purposes of § 1983 merely because he or she is licensed by the state, engaged in a "highly regulated profession," or an officer of the court.  Henderson v. Fisher, 631 F.2d 1115, 1119 (3d Cir. 1980) (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 355 (1974)); Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999) (citing Polk County v. Dodson, 454 U.S. 312, 318 (1981)).  However, there are three exceptional circumstances in which an attorney may become a state actor: (1) by acting as a state official, Angelico, 184 F.3d at 277 (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)), (2) by "conspiring with a state official to deprive a person of his or her constitutional rights," Pellegrino Food Prods. Co., Inc. v. City of Warren, 136 F. Supp. 2d 391, 409 (W.D. Pa. 2000), or (3) by engaging in some action that is "by its nature, chargeable to the state," Angelico, 184 F.3d at 277 (citing Lugar, 457 U.S. at 930).

Turning to the first exception, the court finds that Willis has failed to allege that Attorney Hipp was acting as or conspiring with a state official when she sent the May 26, 2005 letter.  This court has previously held that an attorney's role as a solicitor for a municipality does not automatically render him or her a state official. Spradlin v. Borough of Danville, No. 02-2237, 2005 WL 3320788, *3 (M.D. Pa. Dec. 7, 2005); see also O'Hanlon v. City of Chester, Nos. 00-0664, 00-5617, 2002 WL 393122, *4 (E.D. Pa. Mar. 12, 2002).  Accordingly, Attorney Hipp's role as solicitor does not render her a state official.  With respect to the second exception, an attorney cannot be held to have conspired with his or her client when the attorney's actions were

conducted within the scope of the attorney-client relationship and "for the benefit of the client rather than for the attorney's sole personal benefit."  Heffernan v. Hunter, 189 F.3d 405, 411, 413 (3d Cir. 1999) (applying the aforementioned doctrine to affirm dismissal of claim pursuant to 42 U.S.C. § 1985 alleging conspiracy between attorney and client); Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313-14 (3d Cir. 2003) (same, for civil conspiracy claim); Herring v. Chichester Sch. Dist., No. 06-5525, 2007 WL 3287400, at *5 (E.D. Pa. Nov. 6, 2007) (same, for § 1983 conspiracy claim).  Here, Attorney Hipp's letter was written in the scope of her relationship with and for the benefit of her client, the Township.  As a result, she cannot be found to have conspired with the Township in an effort to deprive Willis of his constitutional rights.  Moving to the third exception, the court disagrees with Willis' contention that Attorney Hipp's conduct is properly chargeable to the state.  The mere fact that her client is a government entity is insufficient to transform her wholly private act into an act completed under color of state law.  Accord Wiley v. Social Sec. Admin., No. 07-692, 2008 WL 65597, at *2 (M.D. La. Jan. 4, 2008) ("Because a private attorney's role is independent from the role of the state, any attorney's conduct, by mere representation of his client, is not chargeable to the state."); see Malone v. Gallagher, No. 07-741, 2008 WL 137966, at *1 (N.D. Tex. Jan. 15, 2008) ("Because an attorney, whether private or appointed, owes his only duty to the client and not to the public or the state, his actions are not chargeable to the state.").

Accordingly, the court will grant Attorney Hipp's motion to dismiss. However, the court will grant Willis leave to file an amended complaint alleging that Attorney Hipp's conduct falls within one of the three exceptions hereinabove described that may transform the private acts of an attorney into acts committed under color of state law.  See, e.g., Frompovicz v. Twp. of S. Manheim, No. 06-2120, 2007 WL 2908292, at *7-8 (M.D. Pa. Oct. 4, 2007) (holding that a township solicitor acted under color of state law when he exercised policy-making authority).

## B.   Personal Involvement

A defendant cannot be held individually liable under § 1983 "solely on the operation of *respondeat superior*."  Evancho, 423 F.3d at 353.  Instead, for a § 1983 claim to survive a motion to dismiss, a plaintiff must allege "that each and every defendant was personally involved in depriving him of his rights."  Kirk v. Roan, No. 04-1990, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006); see also Evancho, 423 F.3d at 353 ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing.").  A defendant's personal involvement in a constitutional violation may be established via allegations of "personal direction," "actual knowledge and acquiescence," or "direct discrimination."  Evancho, 423 F.3d at 353; see also Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).  This court has described the specificity required of such allegations as follows:

Such allegations are sufficient to survive a motion to dismiss when they name the individuals responsible, the conduct, the time, and the place of the incident that deprived a plaintiff of his civil rights.  Conversely, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights in insufficient.  Accordingly, a § 1983 complaint must be dismissed when it fails to contain even a remote suggestion that a supervisory defendant had contemporaneous, personal knowledge of the alleged harm and acquiesced in it.

Kirk, 2006 WL 2645154, at *3 (quoting Evancho, 423 F.3d at 353 and Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)) (internal citations omitted).

In the instant case, Willis has failed to allege that the Supervisor defendants

were personally involved in any of the purported constitutional violations.  Willis's

complaint makes no factual allegations against these individuals,[5] but merely

identifies the office that each holds within the Township.  (See Doc. 1 ¶ 2.)  This is

patently insufficient to satisfy the personal involvement requirement of § 1983.  See

Lucarelli v. Norton, No. 07-564, 2007 WL 1799708, at *3 (M.D. Pa. June 20, 2007)

(dismissing § 1983 claims against defendants against whom "no factual allegations"

were made and who were referred to in complaint as simply "the 'heads' of their

respective offices").  Accordingly, the court will dismiss each of Willis's claims

against the Supervisor defendants.  However, the court will grant Willis leave to file

---

[5]  Defendants concede that the Supervisor defendants had the power to use the Township's right of eminent domain to acquire the 17.35 acre northeast quadrant.  (Doc. 8 at 21-22); see 53 P.S. § 67201 (authorizing township board of supervisors to "acquire lands . . . by the exercise of the right of eminent domain").  However, if this action is the intended factual basis of Willis's claims against the Supervisor defendants, these factual allegations *must* be contained in Willis's complaint.  See Evancho, 423 F.3d at 353.

an amended complaint alleging sufficient facts to suggest that any of these defendants were personally involved in the purported constitutional violations.

### C.   Due Process

The Due Process Clause offers procedural and substantive protections against deprivations of "life, liberty, or property."  U.S. Const. amend. XIV, § 1; see Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 316 (M.D. Pa. 2004).  The threshold issue of due process analysis is whether a plaintiff has been deprived of one of these protected interests.  Id.  Here, Willis alleges that he was deprived of the right to sell and develop his property without due process of law.  (See Doc. 1 ¶ 46.)  Willis asserts both procedural and substantive due process claims, which the court will address seriatim.

### 1.   Procedural Due Process

Procedural due process requirements dictate that "a deprivation of a property interest be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Gikas v. Wash. Sch. Dist., 328 F.3d 731, 738 (3d Cir. 2003).  Before a plaintiff may successfully assert a procedural due process claim, the plaintiff must take "advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  This court has held that "a state provides constitutionally adequate procedural due process when it provides 'reasonable remedies to rectify a legal error by a local administrative body.'"  Desi'z Pizza, Inc. v. City of Wilkes-Barre, No. 01-480, 2006 WL 2460881, at *17 (M.D. Pa. Aug. 23, 2006)

14

(quoting DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir. 1995)).

Moreover, a state provides adequate procedural due process when it "affords a 'full

judicial mechanism' with which to challenge administrative decisions . . . regardless

of whether the plaintiff avails herself of that appeal mechanism." Desi'z Pizza, 2006

WL 2460881, at *17 (quoting Midnight Sessions, Ltd. v. Phila., 945 F.2d 667, 680 (3d

Cir. 1991)).

In the action *sub judice*, Willis concedes that the Township has a local

administrative appeals process, but argues that the process is patently inadequate.

(See Doc. 16 at 15); see also Alvin, 227 F.3d at 116.  Specifically, Willis alleges that

his attempts to file administrative appeals were met with "intentional lack of

response" and "hostility."  (Doc. 1 ¶ 55.)  Assuming *arguendo* that the Township's

local process was inadequate, Willis has failed to allege that the judicial mechanism

provided by the state courts suffered from similar deficiencies.  The extensive state

court record in this case illustrates that Willis has availed himself of state court

processes in an attempt to rectify the alleged harms imposed on him by the

Township.  Both the York County Court of Common Pleas and the Pennsylvania

Commonwealth Court have been called upon to assess whether the Township's

actions constituted a de facto condemnation of Willis's property.  Absent an

allegation that these processes were constitutionally inadequate to protect Willis's

rights, his procedural due process claim cannot proceed.  See Zinermon v. Burch,

494 U.S. 113, 125-26 (1990) (stating that a procedural due process claim is not

actionable "unless and until the State fails to provide due process").  Accordingly,

defendants' motion to dismiss Willis's procedural due process claim will be granted.

However, the court will grant Willis leave to file an amended complaint alleging

sufficient facts to suggest that the state judicial mechanism provided to him was

inadequate to protect his rights.

### 2.    Substantive Due Process

Only those property interests that are considered "fundamental" are

protected by substantive due process principles. Savokinas v. Pittston Twp., No.

06-0121, 2006 WL 2382256, at *3 (M.D. Pa. Aug. 16, 2006) (citing Nicholas v. Pa. State

Univ., 227 F.3d 133, 140 (3d Cir. 2000)). The use and enjoyment of property are

considered fundamental interests. See Pellegrino Food Prods. Co, Inc. v. City of

Warren, 116 F. App'x 346, 347 (3d Cir. 2004); see also Spradlin, 2005 WL 3320788, at

*8. In the instant case, Willis alleges that the Township placed unreasonable

conditions on his subdivision plan and prevented the sale of his land. (Doc. 1 ¶ 51.)

Accepting Willis's allegations as true, as the court must do in the restricted posture

of a motion to dismiss, the court finds that the Township's actions interfered with

Willis's fundamental interest in the use and enjoyment of his property.

However, even when a plaintiff alleges the deprivation of a fundamental

property interest, such deprivation is actionable under substantive due process

principles only when the conduct at issue is so irrational as to "shock the

conscience." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d

392, 402 (3d Cir. 2003) (citing County of Sacramento v. Lewis, 523 U.S. 833, 844-45

(1998)). Substantive due process does not target government actions that are

merely taken for an "improper purpose" or in "bad faith."  See United Artists

Theatre Circuit, Inc., 316 F.3d at 400-02; Corneal v. Jackson Twp., 313 F. Supp. 2d

457, 465-66 (M.D. Pa. 2003), aff'd, 94 F. App'x 76 (3d Cir. 2004).  Rather, the doctrine

constrains only those activities that have *no reasonable relation* to legitimate

government objectives.  Id.  So long as a valid purpose plausibly underlies the

decision, a substantive due process claim will not lie.  Id.  In the land use context,

official conduct "shocks the conscience" only where the conduct is the product of

"corruption or self-dealing, bias against an ethnic group, interference with

constitutionally-protected activity or a virtual 'taking' of property."  Prosperi v.

Twp. of Scott, No. 06-501, 2006 WL 2583754, at *4 (W.D. Pa. Sept. 7, 2006) (citing

Eichenlaub v. Twp. of Ind., 385 F.3d 274, 285-86 (3d Cir. 2004)).

　　　　In the instant case, the court finds that Willis has alleged sufficient facts to

suggest that defendants' actions involved the type of egregious conduct against

which substantive due process principles are intended to guard.  Willis's allegations

suggest that defendants' actions were motivated by an interest in obtaining the

17.35 acre northeast quadrant at the most favorable price and in the most favorable

condition.  Specifically, Willis avers that defendants imposed conditions on his

subdivision plan *solely* for the benefit of the parcel that they sought to obtain and

not for any legitimate land development purpose.  (See Doc. 1 ¶¶ 26-27.)  If, in fact,

defendants actions were motivated by this type of self-dealing, a substantive due

process claim may arise.  See Prosperi, 2006 WL 2583754, at *4.  Moreover, Willis

alleges that a virtual taking resulted from defendants' threats to acquire the

17

remaining portions of his property and from the erroneous declaration of taking that encumbered the title of the 18.31 acre northwest quadrant.  (See, e.g., Doc. 1 ¶¶ 34-35, 42, 59.)  In the restricted posture of a motion to dismiss, these allegations are sufficient to state a valid substantive due process claim.  Id.  Accordingly, the court will deny the Township's motion to dismiss Willis's substantive due process claim.

### D.   Equal Protection

Willis's equal protection claim is premised on the theory that the Township selectively applied the Borough's land use ordinances to his property.  Willis does not allege that he is a member of a protected class, but appears to invoke the "class of one" theory announced by the United States Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam).  Under that theory, a plaintiff may establish an equal protection violation via proof that he or she was "intentionally treated differently from others similarly situated" and "that there is no rational basis for the difference in treatment."  Olech, 528 U.S. at 564; see also Hill v. Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

In the instant case, Willis's allegations are insufficient to satisfy the first element.  To state a class of one equal protection claim, a plaintiff must allege the existence of similarly situated individuals whom the defendant treated differently than the plaintiff.  See id. (affirming the dismissal of a class of one equal protection claim where the plaintiff failed to allege "the existence of similarly situated individuals . . . who [the defendants] treated differently. . . .").  Without alleging that

18

similarly situated landowners were treated differently than he was, Willis cannot

establish a valid class of one equal protection claim.  Accordingly, defendants'

motion to dismiss this claim will be granted.  However, Willis will be granted leave

to amend to allege the existence of similarly situated landowners who were treated

differently by defendants.[6]

---

[6] Defendants also argue that Willis's equal protection claim is barred by principles of collateral estoppel because the issues asserted in the instant action are identical to those that have previously been litigated by the York County Court of Common Pleas and the Pennsylvania Commonwealth Court.  (See Doc. 8 at 20.)  Collateral estoppel applies when:

> "(1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party . . . in the prior case; (4) the party . . . against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment."

Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005); see also Rutter v. Rivera, 74 F. App'x. 182, 187 (3d Cir. 2003); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (2006).  "Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules."  Hitchens v. County of Montgomery, 98 F. App'x 106, 112 (3d Cir. 2004).  The moving party bears the burden to establish that the issue previously litigated is identical to an issue currently before the court.  Timoney v. Upper Merion Twp., No. 01-1622, 2004 WL 2823227, at *6 (E.D. Pa. Dec. 8, 2004) (citing Hitchens, 98 F. App'x at 112).

The court finds that Willis is not collaterally estopped from asserting his equal protection claim because the issue litigated before the Pennsylvania courts is not identical to the question presented by Willis's equal protection claim.  The issue litigated before the Pennsylvania courts was whether the Township's actions resulted in a de facto taking of Willis's property.  A de facto taking occurs "when an entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property."  In re De Facto Condemnation & Taking of Lands of WBF Assocs., L.P., 903 A.2d 1192, (Pa. 2006).  The court finds that the Pennsylvania courts' conclusion that no de facto taking occurred has no impact on Willis's present ability to prove that the Township intentionally treated him differently from other similarly situated landowners.

### E.   Unlawful Seizure

Willis claims that defendants violated his Fourth Amendment rights by unlawfully seizing his property.  Defendants' sole argument in support of their contention that this claim should be dismissed is that the Fourth Amendment applies only to seizures of people.  (Doc. 8 at 10.)  Clearly, this contention is incorrect because the Fourth Amendment extends to claims of unlawful deprivations of an individual's interests in property.  See Soldal v. Cook County, 506 U.S. 56, 62-64 (1992); Rakas v. Illinois, 439 U.S. 128, 133-35 (1978) (citing Alderman v. United States, 394 U.S. 165, 174 (1969)).  Accordingly, the motion to dismiss will be denied with respect to the Fourth Amendment claim.

## IV.   Conclusion

For the foregoing reasons, the court will grant Attorney Hipp's motion to dismiss (Doc. 10) and will grant in part the remaining defendants' motion to dismiss (Doc. 7).  Willis will be granted leave to file an amended complaint.

An appropriate order will issue.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      March 5, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HAROLD C. WILLIS,** | : | **CIVIL ACTION NO. 1:07-CV-0949** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CARROLL TOWNSHIP, JENNIFER B.** | : | |
| **HIPP, ROBERT F. FAULKNER,** | : | |
| **ROBERT L. SCHOPFER, JEFFREY T.** | : | |
| **MURPHY, CALVIN E. HIPP, KEVIN** | : | |
| **A. ZINN, DIANNE PRICE, and MARK** | : | |
| **HILSON,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

AND NOW, this 5th day of March, 2008, upon consideration of the motions to

dismiss (Docs. 7, 10), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.  The motion to dismiss (Doc. 7) is GRANTED in part and DENIED in
    part as follows:

    a.  All claims against defendants Robert F. Faulkner, Robert L.
        Schopfer, Jeffrey T. Murphy, Calvin E. Hipp, and Kevin A. Zinn
        are DISMISSED;

    b.  The procedural due process and equal protection claims against
        defendants Carroll Township, Dianne Price, and Mark Hilson
        are DISMISSED.

2.  The motion to dismiss (Doc. 10) is GRANTED.  All claims against
    defendant Jennifer B. Hipp are DISMISSED.

3.  Plaintiff shall be permitted to file, on or before March 28, 2008, an
    amended complaint that alleges one or more of the following:

a.      Facts sufficient to transform the acts or omissions of defendant Jennifer B. Hipp into acts or omissions under color of state law;

b.      Personal involvement on the part of defendants Robert F. Faulkner, Robert L. Schopfer, Jeffrey T. Murphy, Calvin E. Hipp, and/or Kevin A. Zinn;

c.      Sufficient facts to suggest that the judicial mechanism provided by the Pennsylvania courts was inadequate to protect plaintiff's rights to procedural due process;

d.      The existence of similarly situated landowners who received differential treatment at the hands of defendants Carroll Township, Dianne Price, and/or Mark Hilson.

See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

4.      In the absence of a timely filed amended complaint, the above-captioned case will proceed on the remaining claims.


                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge